IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YORDY DANIEL HURTADO HURTADO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMAL L. JAMISON, in his official capacity as Facility Administrator of the Philadelphia Federal Detention Center, ET AL. | : | NO. 25-6717 |

**MEMORANDUM**

**Padova, J.** **December 18, 2025**

Petitioner Yordy Daniel Hurtado Hurtado is a Venezuelan citizen who entered this country without inspection in 2022, was paroled by federal authorities,[1] and has been living in this country ever since. Last month, he was taken into immigration custody when he reported for a routine check-in appointment with Immigration and Customs Enforcement ("ICE"). Hurtado is now being detained pending removal proceedings, without being afforded a bond hearing. He has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention on statutory grounds and as a matter of due process, and seeking his immediate release from custody or, in the alternative, a prompt bond hearing.

The Government opposes the Petition, contending that Hurtado has been detained pursuant to § 1225(b)(2)(A) of the Immigration and Nationality Act ("INA"), which dictates mandatory detention.

The legal issues that Hurtado's Petition raises have been addressed in hundreds of cases

---

[1] The Immigration and Nationality Act provides that "[t]he Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily . . . for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A).

throughout the country and in more than fifteen opinions in this District alone.[2] In all of this District's cases and almost all of the cases nationwide, the courts have rejected Respondents' interpretation of § 1225(b)(2)(A), and have instead concluded that noncitizens like Hurtado, who have been residing in this country, can only be detained pursuant to § 1226 of the INA, which affords detainees the opportunity for bond. We reach the same conclusion and will therefore grant Hurtado's Petition.

## I. BACKGROUND

On October 9, 2022, at the age of 25, Hurtado, a citizen and national of Venezuela, entered this country from Mexico, and he was paroled the next day. (Pet'n ¶ 30 & Ex. B.) Thereafter, he attended his routine supervision appointments without fail. (Id. ¶ 31.) According to the Petition, Hurtado has resided in Reading, Pennsylvania for three years, maintains valid employment authorization, is gainfully employed in Berks County, Pennsylvania, and has no criminal history. (Id. ¶¶ 1, 32-33.) In March of 2024, he filed an application for Temporary Protected Status and, on June 27, 2024, he applied for asylum. (Id. ¶ 32 & Ex. A.) Hurtado maintains that he faced persecution and targeted threats from state actors in Venezuela because he advocated for democratic reforms, free expression, and protection of civil liberties. (Id. ¶¶ 28-29.)

On November 25, 2025, Hurtado was attending one of his routine check-ins, when he was arrested and taken into ICE custody. (Id. ¶ 34.) Although he was initially detained at the

---

[2] See Demirel v. Fed. Det. Ctr. Phila., Civ. A. No. 25-5488, 2025 WL 3218243, at *2 and App. (E.D. Pa. Nov. 18, 2025) (collecting 288 cases nationwide); see also, e.g., Picon v. O'Neill, Civ. A. No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025); Anirudh v. McShane, Civ. A. No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); Pereira v. O'Neill, Civ. A. No. 25-6543, 2025 WL 3516665 (E.D. Pa. Dec. 8, 2025); Ibarra v. Warden of Fed. Det. Ctr. Phila., Civ. A. No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025); Patel v. McShane, Civ. A. No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); Ndiaye v. Jamison, Civ. A. No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); Kashranov v. Jamison, Civ. A. No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025).

Philadelphia Federal Detention Center, he was subsequently moved to the Moshannon Valley Processing Center in Phillipsburg, Pennsylvania. (Resp. in Opp'n to Pet'n at 3.) Hurtado has been detained without bond and has not been afforded a bond hearing. (Pet'n ¶ 26.) He has not been told the reason for his detention. (Id. ¶ 34.) Hurtado filed his Petition for Writ of Habeas Corpus on November 29, 2025, seeking immediate release or, in the alternative, a bond hearing.

## II. LEGAL STANDARD

We are empowered to grant habeas relief to a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This includes the power to grant relief to noncitizens, because "[t]he writ of habeas corpus has always been available to review the legality of Executive detention," and it has "regularly [been] invoked on behalf of noncitizens, particularly in the immigration context." INS v. St. Cyr, 533 U.S. 289, 305 (2001) (citations omitted). The burden is on the petitioner to show that he is entitled to habeas relief. Brown v. Cuyler, 669 F.2d 155, 158 (3d Cir. 1982) (citation omitted).

## III. DISCUSSION

The Government argues that we should dismiss the habeas petition for lack of jurisdiction or failure to exhaust administrative remedies. In the alternative, it argues that we should deny the petition on its merits, holding that Hurtado has been properly detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Hurtado, in contrast, argues that there is no basis for dismissal, and that his detention without bond under § 1225(b)(2)(a) rests on a statutory misinterpretation and violates his right to due process. Hurtado maintains that, as a noncitizen residing in the United States, he could only be detained pursuant to 8 U.S.C. § 1226, which entitles him to a bond hearing before an immigration judge.

**A. Jurisdiction**

The Government's jurisdictional arguments rest on three statutory provisions: 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a). We address each in turn.

Under § 1252(g), "no court shall have jurisdiction to hear any cause or claim" that arises from "the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). The Government argues that this provision is broad enough to bar us from considering Hurtado's claim that his detention is illegal. However, the United States Court of Appeals for the Third Circuit had stated that § 1252(g) "does not sweep broadly," but rather, "reaches only the[] three specific actions" referenced in the provision: the commencement of proceedings, the adjudication of case, and the execution of removal orders. Tazu v. Att'y Gen. United States, 975 F.3d 292, 296 (3d Cir. 2020) (citing Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)) (additional citation omitted). The statutory provision simply does not reach "everything that arises out of" the three specified actions. Id. (citing Jennings, 583 U.S. at 294). Accordingly, § 1252(g) does not bar our consideration of Hurtado's petition, which challenges his detention without a bond hearing.

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States. . . shall be available only in judicial review of a final order [of removal] . . . ." 8 U.S.C. § 1252(b)(9). Respondents argue that this provision makes clear that only the Court of Appeals has jurisdiction over Hurtado's habeas petition. However, the Third Circuit has clarified that § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.,

950 F.3d 177, 186 (3d Cir. 2020); see also Jennings, 583 U.S. at 294-95 (explaining that § 1252(b)(9) is only a jurisdictional bar to a petition "asking for review of an order of removal," "challenging the decision to detain [the petitioner] in the first place or to seek removal," or "challenging any part of the process by which [the petitioner's] removability will be determined"). Hurtado's challenge to his detention is just such a situation; postponing consideration of Hurtado's request for relief until review of any final order of removal would deprive Hurtado of any opportunity for meaningful relief from his pre-hearing detention. Accordingly, 8 U.S.C. § 1252(b)(9) does not bar our consideration of Hurtado's petition.

Third and finally, § 1252(a)(2)(B)(ii) provides that no court shall have jurisdiction to review a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). The Government argues in a single sentence that this provision provides a jurisdictional bar to any relief here. However, it does not attempt to square this argument with their primary contention that Hurtado's detention pursuant to § 1225(b)(2)(A) is statutorily-mandated, not discretionary at all. Moreover, if Hurtado is correct that § 1226 rather than § 1225(b) governs his detention, then the Government is constrained by § 1226's terms, which mandate a bond hearing. Thus, by both side's accounts, there is nothing discretionary about the detention issue presented. Accordingly, we conclude that § 1252(a)(2)(B)(ii) provides no jurisdictional bar to our consideration of Hurtado's petition.

**B. Exhaustion of Administrative Remedies.**

The Government next argues that we should dismiss Hurtado's petition because he has failed to exhaust his administrative remedies through the immigration courts. "In general, [a petitioner] must exhaust administrative remedies before proceeding on a habeas petition brought

under § 2241." Pinet v. Holt, 316 F. App'x 169, 171 (3d Cir. 2009) (per curiam) (citing Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996)). However, a petitioner "need not exhaust administrative remedies where the issue presented involves only statutory construction." Vasquez v. Strada, 684 F.3d 431, 433–34 (3d Cir. 2012) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)). Here, the primary issue presented is one of statutory construction: whether Hurtado's detention falls under, and is governed by, § 1225 or § 1226. Thus, exhaustion is not required.

In addition, exhaustion is not required because it would be futile. See Cerverizzo v. Yost, 380 F. App'x 115, 116 (3d Cir. 2010) ("[T]he administrative exhaustion requirement . . . may be excused [in connection with a § 2241 habeas petition] if an attempt to obtain relief would be futile . . . ." (citations omitted)). On September 5, 2025, the Board of Immigration Appeals ("BIA") issued an opinion in Matter of Yajure Hurtado, 29 I & N Dec. 216 (BIA 2025). The BIA opined in that decision that an immigration judge has no authority to consider a bond request for any individual who entered the United States without inspection and was apprehended and paroled near the border, irrespective of how long the individual has since resided in this country. See id. at 225. Were Hurtado to seek relief through administrative channels, the Yajure Hurtado decision would be controlling and he would be denied relief. In contrast, we are not bound by the BIA's decision and are obligated to engage in our own independent review of the statutory issues presented. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority.") Thus, the existence of the Yajure Hurtado decision provides an alternative basis for our conclusion that exhaustion is not required in this case.

**C. Lawfulness of Detention**

As noted above, the essential dispute in this case is whether Hurtado's detention is governed by § 1225(b)(2)(A), which mandates detention without bond, or should have been detained under § 1226(a), which would entitle him to a bond hearing. The Government does not dispute that it could have detained Hurtado pursuant to § 1226(a), but it maintains that it was within its right to proceed under § 1225(b)(2)(A). The resolution of this dispute is a matter of statutory construction.

When interpreting a statute, we must first "start . . . with the statutory language." United States v. Brow, 62 F.4th 114, 119 (3d Cir. 2023) (citation omitted). We give words of a statute their "plain" and "ordinary meaning," Roberts v. Sea-Land Servs., Inc., 566 U.S. 93, 100 (2012) (quotations omitted), and construe the statute "so that effect is given to all its provisions," Hibbs v. Winn, 542 U.S. 88, 101 (2004) (citation omitted). "[N]o clause, sentence, or word" should be considered "superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quotation and citation omitted). We must also read "the words of a statute . . . in their context and with a view to their place in the overall statutory scheme." Roberts, 566 U.S. at 101 (quotation omitted).

Section 1225, as a whole, bears the title "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. Its provisions detail the procedures to be applied to "arriving aliens" when they seek admission to this country, including the processes for screening such individuals at the border; taking statements from and conducting interviews with them; and removing them if they are deemed inadmissible. See generally id. In that context, § 1225(b)(2)(A) provides: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking

admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(A). The word "shall" in that provision makes clear that detention is mandatory. Jennings, 582 U.S. at 300.

Section 1226, in turn, is entitled "Apprehension and detention of aliens," and addresses the arrest and detention of noncitizens who are present in the country, with special provisions for those who have committed crimes. See generally 8 U.S.C. § 1226; Jennings, 583 U.S. at 303 ("§ 1226 applies to aliens already present in the United States.") Section 1226(a), our main focus, provides as follows:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) [concerning criminal aliens who are subject to mandatory detention] and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole. . . .

Id. § 1226(a); see also Jennings, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). The Supreme Court has stated that § 1226(a) is the "default rule" for detention of noncitizens pending removal. Jennings, 583 U.S. at 288. A "detainee under § 1226(a) may be released on bond by ICE or by an immigration judge (IJ) if the detainee 'demonstrate[s] . . . that such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding.'" Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 275 (3d Cir. 2018) (alterations in original) (quoting 8 C.F.R. § 236.1(c)(8)).

In detaining Hurtado pursuant to § 1225, the Government maintains that he is an "applicant for admission" who is "seeking admission" and thus, has been properly detained pursuant to § 1225. Hurtado is undoubtedly an "applicant for admission," which the statute defines to include any "alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1); (Pet'r's Reply Mem. at 15 ("It is undisputed that, when Petitioner was arrested, he was present in the United States and had not been admitted.")).

However, by its terms, the mandatory detention provision of § 1225(b)(2)(A) does not apply to all applicants for admission, but only those who are "seeking admission." 8 U.S.C. § 1225(b)(2)(A). See Diallo v. O'Neil, Civ. A. No. 25-6358, 2025 WL 3298003, at *4 (E.D. Pa. Nov. 26, 2025) ("Not all 'applicant[s] for admission are subject to Section 1225(b)—just those who are seeking admission'" (alteration in original) (quoting 8 U.S.C. § 1225(b)(2)(A))). In the Government's view, "an 'applicant for admission' is necessarily 'seeking admission'" (Resp. in Opp'n to Pet'n at 20 (quoting Rojas v. Olson, Civ. A. No. 25-1437, 2025 WL 3033967, at *8 (E.D. Wis. Oct. 30, 2025)), thereby making every applicant for admission subject to § 1225(b)(2)(A). However, such assertion renders the "seeking admission" language entirely superfluous because it would allow for the words to be omitted without changing the provision's meaning. Demirel v. Fed. Det. Ctr. Phila., Civ. A. No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025) ("I am not prepared to read [the 'seeking admission' language] out of existence." (citing United States ex rel. Polansky v. Exec. Health Res. Inc., 599 U.S. 419, 432 (2023)); Diallo, 2025 WL 3298003, at *5 (observing that the Government's "reading renders the "seeking admission limitation superfluous, and basic tenets of statutory construction reject it"); Kashranov. v. Jamison, Civ. A. No. 25-5555, 2025 WL 3188399, at *7 (E.D. Pa. Nov. 14, 2025) (finding the Government's approach of "treat[ing] the two distinct statutory phrases as interchangeable" to "ignore the cannon

against surplusage, one of the standard tools of statutory construction" (citation omitted)). Under the basic canons of statutory interpretation, this cannot be. TRW Inc., 534 U.S. at 31 (instructing that a court should not construe a statutory clause to be superfluous) (quotation and citation omitted)).

In at least three exhaustively researched, well-reasoned, and well-supported decisions, members of this Court have carefully analyzed § 1225(b)(2)(A)'s language, its full context, the INA's legislative history, and longstanding agency practice, and they have consistently concluded that Congress intended "seeking admission" to mean "*actively* trying to acquire or gain" physical access to the country, "typically at a border or port of entry." Kashranov, 2025 WL 3188399, at *6-7; see also Ndiaye v. Jamison, Civ. A. No. 25-6007, 2025 WL 3229307, at *4-7 (E.D. Pa. Nov. 19, 2025); Ibarra v. Warden of Fed. Det. Ctr. Phila., Civ. A. No. 25-6312, 2025 WL 3294726, *4-8 (E.D. Pa. Nov. 25, 2025). We agree with this conclusion, which is consistent with our above observation that § 1225, as a whole, addresses the treatment of "arriving aliens." See Kashranov, 2025 WL 3188399, at *7 (noting that "the structure and placement of Section 1225 . . . makes clear that Congress designed this provision to govern inspections and detentions of aliens at the border"); see also Ndiaye, 2025 WL 3229307, at *5 (finding the title and headings of § 1225 to indicate that it applies to noncitizens arriving in the country). This conclusion also rightly gives meaning to Congress's use of the present participle "seeking," which conveys "ongoing and continuous action rather than a completes or static state." Kashranov, 2025 WL 3188399, at *6 (citations omitted); see also Nidiaye, 2025 WL 3229307, at *5 ("The phrase 'seeking admission' connotes some affirmative, present-tense action."). Under this plain meaning construction of "seeking admission," it becomes clear that only individuals who are newly-arrived in the country and seeking entry are subject to the § 1225(b)(2)(A)'s mandatory detention.

Notably, the Government's sweeping interpretation of § 1225(b)(2)(A) would permit the mandatory detention of any applicant for admission to this country, irrespective of whether they have previously been permitted to reside here, how long they have resided here, and whether they have been law-abiding. It is impossible to square this interpretation with Congress's recent amendments to § 1226(c). Section 1226(c) explicitly excepts from the bond provisions in § 1226(a), and subjects to mandatory detention, certain criminal aliens, including those convicted of most drug offenses and certain firearm offenses. 8 U.S.C. § 1226(c)(1)(B); see also 8 U.S.C. §§ 1227 (a)(2)(B), (C). In 2025, Congress passed the Laken Riley Act,[3] which added to the list of criminal aliens who are subject to mandatory detention under § 1226, so that it now covers individuals who, inter alia, entered the country without being admitted or paroled, committed fraud in procuring a visa, and/or were convicted of various additional crimes such as burglary and assault of a law enforcement officer. 8 U.S.C. § 1226(c)(1)(E)(i)-(ii); see also 8 U.S.C. § 1182(a)(6)(A), (6)(C), (7). It would have been entirely unnecessary to add these new categories of individuals to the mandatory detention provisions in § 1226(c) if, as the Government contends, those very same individuals could already be arrested and detained without bond pursuant to § 1225(b)(2)(A), merely for being applicants for admission. We simply will not presume that Congress passed a law that has no meaningful effect. See Ross v. Blake, 578 U.S. 632, 641-42 (2016) ("When Congress amends legislation, courts must "presume it intends [the change] to have real and substantial effect." (quoting Stone v. INS, 514 U.S. 386, 397 (1995))). Thus, these recent amendments drive home the conclusion that Congress never intended § 1225(b)(2)(A) to apply to noncitizens who have been permitted to come into this country, on parole or otherwise, and have been residing in this country for years.

---

[3] Pub. L. 199-1 § 2, 139 Stat 3 (2025).

For these reasons, and based on the more comprehensive analyses in the three above-referenced opinions, i.e., Kashranov, Ndiaye, and Ibarra, as well as numerous other persuasive opinions in this District, we conclude, as a matter of statutory interpretation, that § 1225(b)(2)(A) applies only to "noncitizens who are just arriving or have recently arrived in the country," Ndiaye, 2025 WL 3229307, at *5, and "does not apply to individuals . . . who have already entered and resided in the country for an extended period," Kashranov, 2025 WL 3229307, at *7 (citation omitted). This interpretation allows for 1225(b)(2)(A) and § 1226 to be read both harmoniously and consistent with Congressional intent. Moreover, in Hurtado's case, this interpretation dictates that his detention under § 1225(b)(2)(A) is unlawful, because he is not a recent arrival but has been residing here for three years.

## IV. CONCLUSION

In sum, we conclude that Hurtado has been unlawfully detained pursuant to § 1225(b)(2)(A), which does not apply to noncitizens in his situation, and we grant his Petition for Writ of Habeas Corpus on that basis.[4] Having reached this conclusion, we will order his immediate release from his unlawful detention. See Morocho v. Jamison, Civ. A. No. 25-5930, 2025 WL 3296300, at *3 (E.D. Pa. Nov. 26, 2025). If the Government elects to re-detain Hurtado pursuant to § 1226(a), it must afford him a bond hearing as that provision and its accompanying regulations demand.

BY THE COURT:

/s/ John R. Padova, J.

______________________

John R. Padova, J.

---

[4] Because we find that Hurtado's detention violates the INA, we do not reach his alternative claims that his detention also violated the Administrative Procedures Act, procedural and substantive due process, and certain BIA regulations. (See Pet'n at 19-22.)